**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GARY D. DeWILLIAMS,

Defendant - Appellant.

Nos. 02-1392 and 02-1477

(D. Colorado)

(D.C. No. 99-CR-120-RB)

**ORDER AND JUDGMENT** *

Before **EBEL**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Gary DeWilliams was convicted, following a jury trial, of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 293 months' imprisonment and five years' supervised release. On appeal, Mr. DeWilliams raises a single issue, arguing that the district court erred in denying his repeated motions for a continuance after his assertion of the right to represent himself at trial.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

Police encountered Mr. DeWilliams in a motel hallway on the night of February 26, 1999, and, suspecting him of involvement in the criminal activity they were investigating, asked for identification. After observing that the photo i.d. offered by DeWilliams did not match his appearance, the police attempted to conduct a pat-down search for weapons. DeWilliams began to struggle, and a loaded 9-millimeter magazine fell to the floor. Police then retrieved a gun from DeWilliams' waistband and placed him under arrest.

After a criminal history review revealed five prior felony convictions, DeWilliams was indicted under 18 U.S.C. § 922(g)(1). [1] A jury found him guilty of the charge. However, we vacated DeWilliams' conviction on appeal and remanded for a new trial because DeWilliams' attorney had stipulated to an element of the crime – that the gun or ammunition had traveled in interstate commerce – without DeWilliams' consent. United States v. DeWilliams, Nos. 00-1242, 00-1243, 00-1370, 29 Fed. Appx. 913, 918 (10th Cir. Dec. 12, 2001).

---

[1]Section 922(g) states: "It shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ."

Following remand, on February 22, 2002, the district court appointed Robert Berger as DeWilliams' counsel. [2] On April 2, having performed a speedy trial calculation, the court set June 10 as the trial date. On May 13, DeWilliams moved to dismiss the court's appointment of counsel and proceed pro se. The court held a hearing on this motion on May 17. At the hearing, Mr. DeWilliams stated that he and Mr. Berger disagreed regarding the utility of further investigation, evidence, witnesses, and motions to DeWilliams' defense. When asked for its position, the government expressed concern, in light of DeWilliams' expressed interest in further investigation, that allowing DeWilliams to proceed pro se would delay the trial. In response, the court, noting that a motion to continue was not then before it, warned DeWilliams that granting his motion to represent himself "will not necessarily and automatically work a continuance of trial by jury now set to commence June 10th this year." R. Vol. 15 at 17. The court further noted that, in any event, its docket might not permit the trial to be rescheduled in time to preserve DeWilliams' right to a speedy trial. Id. at 19. At the end of the hearing, DeWilliams told the court he had heard and understood what the court had said and he had no questions. Id. at 43. The court then issued its findings and conclusions, granting DeWilliams' motion to proceed pro se and

---

[2]The trial and appellate docket sheets indicate that Mr. Berger was the sixth attorney to represent Mr. DeWilliams in this case.

appointing Mr. Berger as standby and advisory counsel. The court included in its findings that DeWilliams was by that time already quite familiar with his own case, having sat through his first trial, and having a general knowledge of legal proceedings as a result of prior informal legal training. Id. at 44-45. The court also found that DeWilliams understood that the "the court will not necessarily vacate and continue trial" as a result of DeWilliams' self-representation. Id. at 46.

Nevertheless, on May 28, DeWilliams filed a motion for a continuance on the grounds that he required time to review the transcripts from his first trial, to file additional motions, and to allow the investigator Mr. Berger had previously hired on his behalf to continue her investigation. DeWilliams asserted that he had only belatedly received a copy of his indictment, the grand jury transcript, and discovery from his former counsel. R. Vol. 1 at tab 228.

The court denied this motion at the trial preparation conference three days later, finding that DeWilliams was already familiar with his indictment and grand jury proceedings and had failed to plead, claim, or demonstrate prejudice as a result of his allegedly late discovery acquisitions. At the same conference, the court granted DeWilliams' motion for an order for the current investigator to continue her investigation up to the June 10 trial date, despite DeWilliams' failure

-4-

to convince the court that the investigation was likely to produce exculpatory witnesses or information.

DeWilliams filed a second motion to continue on June 5. He asserted that the investigator previously hired by Berger refused to work for him as a pro se litigant, so he needed more time to hire another investigator and complete the necessary investigation. He also asserted the need for more time to question witnesses and review evidence, claiming that the government's most recent lists, which DeWilliams had received on May 31, 2002, included witnesses and exhibits that had not been presented during his first trial. Id. at tab 243.

In a written order dated June 6, 2002, the court found that DeWilliams had failed to suggest any basis for believing that the witnesses he sought to question or the investigation he sought to conduct would provide him with any exculpatory evidence. Concluding that DeWilliams had failed to demonstrate that he would be prejudiced without a continuance or that the court and other parties would not be significantly inconvenienced if one were granted, the court denied DeWilliams' motion. R. Vol. 2 at tab 244.

DeWilliams' third motion to continue was made orally in a pretrial conference the morning of Monday, June 10, the day the trial was scheduled to begin. This time, DeWilliams argued that he was unfairly surprised by the addition of four more witnesses and eleven more exhibits – including documents

related to DeWilliams' prior conviction, a video of a police officer firing DeWilliams' gun, rounds of ammunition, a diagram of the motel, and a belt – to the government's lists, copies of which he had only received that morning. The government confirmed that it had filed amended witness and exhibit lists the preceding Friday. It explained that almost all the additional evidence and witnesses had been added to establish two elements of DeWilliams' alleged crime – his prior felony conviction and that the firearm and ammunition in DeWilliams' possession were indeed a "firearm" and "ammunition," in accord with federal definitions, that had traveled in interstate commerce. This proof was needed because DeWilliams had refused to stipulate to either element. The government also asserted that most of the added exhibits, including the belt, had been included on exhibit lists in DeWilliams' first trial even if they were not actually presented during the trial.

The district court found that DeWilliams had not demonstrated irreparable prejudice vis-a-vis the added witnesses and that whatever slight prejudice there might be could be remedied through cross-examination. R. Vol. 17 at 15. The court also found that "[a]lmost without exception, each enumerated exhibit to which [DeWilliams] now complains has been provided to him via former counsel as a part of discovery with which he is chargeable as a matter of law in this case." Id. at 32. Noting that it had warned DeWilliams, when it allowed him to proceed

-6-

pro se, that "he would be treated to the same standard as counsel licensed to practice law before the bar of this court, which included but is not limited to knowledge of discovery previously provided Mr. Berger and other former counsel," the court denied DeWilliams' motion.      Id. at 33.

DeWilliams' second trial resulted in a conviction, from which he now appeals, arguing error in the district court's refusal to grant his motions to continue. [3]

## DISCUSSION

"We review the denial of a motion for continuance of trial for abuse of discretion and 'will find error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant.'"      United States v. Diaz, 189 F.3d 1239, 1247 (10th Cir. 1999) (quoting      United States v. Simpson, 152 F.3d 1241, 1251 (10th Cir. 1998)).  Our determination of whether the district court abused its discretion turns primarily on the individual circumstances of a case,  United States v. West, 828 F.2d 1468, 1469-70 (10th Cir. 1987), taking into account, among other things, the following factors:

(1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the

---

[3]In his opening brief, DeWilliams raised a second issue, but in his reply brief and at oral argument he withdrew that issue from our consideration.

purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; (4) the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

Diaz, 189 F.3d at 1247 (quoting United States v. Wynne, 993 F.2d 760, 767 (10th Cir. 1993)) (further quotation omitted).

The bases on which DeWilliams rests this challenge are essentially twofold. First, DeWilliams argues the district court erred by "imput[ing] to [him] all of the discovery and information known to prior counsel." Appellant's Opening Br. at 19. The court's denials of a continuance were based on this error, according to DeWilliams, and resulted in the court's failure to allow him the "time necessary to prepare his defense" adequately. Appellant's Reply Br. at 8. DeWilliams claims the same right to adequate preparation time that is accorded to defendants with new counsel assigned to their case.

Second, DeWilliams asserts that the district court's failure to grant a continuance harmed him at trial by preventing him from calling witnesses who might have provided exculpatory evidence on his behalf. In particular, he points to his inability to subpoena Lisa Leahy, president of the gun manufacturing company that allegedly produced the gun police found in DeWilliams' possession. Ms. Leahy had originally appeared on the government's witness list but was not

on the amended list DeWilliams received the morning of June 10, the first day of trial.

In regard to DeWilliams' first point, we agree with the general proposition that a change in representation, whether due to newly assigned counsel or the decision to proceed pro se, may, under some circumstances, entitle a criminal defendant to a continuance in order to prepare adequately for trial. See United States v. Akers, 215 F.3d 1089, 1099 (10th Cir. 2000) (suggesting that, when a trial court grants a defendant's request for self-representation, "it arguably would be an abuse of discretion and a denial of due process to deny the defendant's request for a continuance to prepare for trial"); United States v. King, 664 F.2d 1171, 1173 (10th Cir. 1981) (holding that a newly assigned counsel may be entitled to a continuance based on the criminal defendant's Sixth Amendment right to effective assistance of counsel). To the extent the district court, by imputing to DeWilliams knowledge of discovery given to prior counsel, implied that additional preparation time would never be necessary, it was in error.

Under the circumstances of this case, however, the district court's determination that DeWilliams did not require additional time to prepare his defense was not arbitrary or unreasonable. We disagree, first of all, that DeWilliams' status as a pro se litigant was entirely equivalent to that of newly assigned counsel. For one thing, we note that King is not applicable here because

by knowingly and voluntarily choosing to proceed pro se, DeWilliams waived his Sixth Amendment right to assistance of counsel. [4] Further, the district court did not clearly err in finding that DeWilliams was very familiar with his own case by the time he began representing himself.

Significantly, the charge of possession of a firearm by a convicted felon is not one that calls for highly complex or technical defenses. The charge has only three elements that must be proved: (1) defendant was a felon; (2) the gun or ammunition traveled in interstate commerce; and (3) defendant possessed the gun or ammunition. The first two elements, in particular, seem unlikely to arouse much controversy at trial, or to require extensive investigation by the defense. Thus, even the government's surprise addition on the first day of trial of new witnesses and exhibits, nearly all of which had been added to establish these two elements, does not convince us that DeWilliams needed more time to prepare. Mr. DeWilliams did not explain, nor can we imagine, how additional preparation would have enabled him to raise a reasonable doubt on either of these points.

We also reject DeWilliams' second argument, that the district court's denials of his motions to continue harmed his case by preventing him from calling certain witnesses, including Ms. Leahy. We note first that, as the government

---

[4]We note that DeWilliams expressly "does not claim here that the district court erred in granting his request for pro se representation." Appellant's Opening Br. at 20.

points out, DeWilliams did not refer to Ms. Leahy's absence from the government's last witness list in his June 10 request for a continuance. DeWilliams did, however, submit a request to the court to subpoena Ms. Leahy, along with eleven other potential witnesses, on June 10, which the court considered on June 12, the third day of trial. At that time, Mr. DeWilliams claimed that he wished to question Ms. Leahy "as to how this gun traveled, when it traveled, what it looked like." R. Vol. 19 at 359. Presumably concluding that there was no reasonable likelihood that DeWilliams would obtain exculpatory information from Ms. Leahy, the court denied DeWilliams' request to subpoena her, although it ordered the subpoena of five others on DeWilliams' list on the basis that their presence was "necessary to an adequate defense." Id. at 362-64. On appeal, DeWilliams provides no additional indication that Ms. Leahy's presence at his trial could possibly have assisted his defense. We conclude that, to the extent the district court's denial of a continuance caused Ms. Leahy's absence from DeWilliams' trial, its decision was not arbitrary or unreasonable.

DeWilliams does not mention by name any other witnesses that he was unable to call. Although DeWilliams alluded to the possibility that he might find other witnesses to testify on his behalf through further investigation, he never clearly explained who these witnesses were or what exculpatory information they might provide.

Under the circumstances of this case, and taking the four Wynne factors into account, we conclude that the district court's denials of Mr. DeWilliams' motions to continue were neither unreasonable nor arbitrary and that no material prejudice resulted.

## CONCLUSION

For the foregoing reasons, DeWilliams' conviction is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge